COGO v MOORE

Docket No. 57679. Submitted July 19, 1982, at Detroit.—Decided September 23, 1982.

Plaintiff, Eileen Marie Cogo, brought an action against defendant, Sam Moore, for damages for injuries sustained in an automobile accident. The jury in the Wayne Circuit Court, Theodore R. Bohn, J., found in favor of the plaintiff for $20,000 in damages. Defendant appeals from the judgment entered pursuant to the jury verdict alleging error of the trial court in refusing to accept the jury's findings as they were written in notes from the jury. Defendant also alleged that error occurred when plaintiff's counsel made references to defendant's insurance and state of intoxication at the time of the accident. *Held:*

1. Votes taken in the jury room prior to being returned in court are merely preliminary and are not binding since a juror may recant a previous assent to a verdict at any time prior to his express in-court assent at the polling of the jurors.

2. No verdict having been reached, it is clear that the trial judge, in revising the verdict form and reinstructing the jury before sending them back for further deliberations, took a proper and reasonable course. The verdict entered by the trial court was the only true and valid verdict.

3. Plaintiff's counsel's statement regarding insurance was not so improper that any prejudicial effect therefrom could not

REFERENCES FOR POINTS IN HEADNOTES
[1] 76 Am Jur 2d, Trial §§ 1116, 1117.
[2] 76 Am Jur 2d, Trial § 1126.
[3] 5 Am Jur 2d, Appeal and Error §§ 624-627.
[4] 5 Am Jur 2d, Appeal and Error § 549.
[5, 6] 29 Am Jur 2d, Evidence §§ 404, 405, 407.
   Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance. 4 ALR2d 761.
[7, 8] 5 Am Jur 2d, Appeal and Error § 881.
[8] 5 Am Jur 2d, Appeal and Error § 803.
[9] 76 Am Jur 2d, Trial § 1122.

have been eliminated by a curative instruction if one had been requested upon a timely objection.

4. Plaintiff's counsel's reference to insurance was an effort to rebut defense counsel's improper attempt to impress upon the jury the fact that his client was unemployed and, therefore, unable to pay a judgment and was, therefore, an attempt to quench the passions of the jury improperly influenced by his opponent's argument.

5. The trial court did not abuse its discretion in determining that evidence of intoxication was relevant to the damages aspect of the trial. Even if the evidence was erroneously admitted, it was harmless error.

Affirmed.

C. J. Hoehn, J., dissented and would hold that, when the jury notes indicated that the jury had reached a verdict, it was incumbent upon the trial court to call the jury in and ask if they had arrived at a verdict. He feels that the failure to do so indicated to the jury that something further was expected of them. He feels the conduct of the court coerced the jury verdict and resulted in a miscarriage of justice. He would reverse and remand for a new trial.

## Opinion of the Court

1. Jury — Preliminary Votes.

Juror votes taken in the jury room prior to the announcement of the verdict in open court are merely preliminary votes and do not constitute a valid verdict.

2. Jury — Verdict — Recanting Assent.

A juror may recant a previous assent to a verdict at any time prior to his express in-court assent at the polling of the jurors.

3. Evidence — Appeal — Preserving Question.

The failure to object to matters raised in closing arguments generally precludes appellate review of the propriety of such arguments.

4. Appeal — Plain Error — Rules of Evidence.

The Court of Appeals may take notice of plain errors affecting substantial rights even though they were not brought to the attention of the trial court by a timely objection of a party (MRE 103[d]).

5. Trial — Evidence — Insurance — Rules of Evidence.

Evidence that a person was or was not insured against liability is

not admissible upon the issue of whether he acted negligently or otherwise wrongfully, although it is admissible when offered for another purpose, such as proof of agency, ownership, or control, if controverted, or bias or prejudice of a witness (MRE 411).

6. TRIAL — EVIDENCE — INSURANCE.

Intentionally interjecting into evidence the subject of insurance is reversible error if the sole purpose is to inflame the passions of the jury so as to increase the size of the verdict; however, it is not reversible error if the subject of insurance is only incidentally brought into the trial, is only casually mentioned, or is used in good faith for purposes other than to inflame the passions of the jury (MCL 500.3030; MSA 24.13030).

7. EVIDENCE — APPEAL.

The admissibility of evidence rests within the sound discretion of the trial court and its determination will not be set aside unless there has been an abuse of discretion.

8. APPEAL — RULES OF EVIDENCE.

The Court of Appeals will not reverse upon finding that evidence was erroneously admitted by the lower court where the Court determines such error to be harmless (MRE 103[a]).

DISSENT BY C. J. HOEHN, J.

9. TRIAL — VERDICT — CORRESPONDENCE WITH JURY.

*It is incumbent on a trial judge to call the jury in and ask if they have arrived at a verdict where the jury indicates in notes sent to the judge that they have reached a verdict.*

*Stanley T. Bartnicki* and *Charles T. McGorisk (Thomas A. Ricca, of counsel), for plaintiff.*

*Simon, Fried, Cohn & Saperstein (by Taras P. Jarema), for defendant.*

Before: M. F. CAVANAGH, P.J., and D. C. RILEY and C. J. HOEHN,* JJ.

PER CURIAM. Defendant appeals as of right from a judgment entered pursuant to a jury verdict in

* Circuit judge, sitting on the Court of Appeals by assignment.

favor of plaintiff for $20,000 in damages for injuries sustained in an automobile accident.

The relevant facts are not in dispute. On July 19, 1975, plaintiff was driving her 1974 Mustang on the Lodge Expressway near Linwood in the City of Detroit. As plaintiff approached the Linwood overpass, traffic slowed as the expressway narrowed from three lanes to one lane due to construction. Plaintiff was traveling at a speed of approximately five miles per hour when her car was struck from behind by a vehicle driven by defendant, forcing her car into the car in front of her. Plaintiff was thrown foreward and she struck her leg on the armrest of the door. As a result of this accident, plaintiff sustained a hematoma (bruise) on her left thigh which swelled to a large lump. The lump developed into a lipoma, which is a fatty tumor, which became filled with considerable fibrotic connective tissue. Eventually, this tumor had to be surgically removed. The surgery left a scar and a depression around the scar nearly five inches long and three inches wide.

On the first day of trial, prior to selection of the jury, defense counsel indicated that defendant conceded and would stipulate to liability for the accident. The matter proceeded to trial on the issues of whether plaintiff's injuries met the no-fault threshold, and if so, the amount of damages to which she was entitled.

At the conclusion of its instructions to the jury, the trial court provided them with the following, seemingly unambiguous, special verdict form.

"Verdict

"Question No. 1: Was the defendant's negligence a proximate cause of an injury to the plaintiff?
"Answer: _____ (yes or no)

"If your answer is 'no', do not answer any further questions.

"QUESTION No. 2: Did the injury which plaintiff suffered result in serious impairment of a body function, or permanent serious disfigurement?

"Answer: _____ (yes or no)

"If your answer is 'no', do not answer any further questions.

"QUESTION No. 3: What is the total amount of plaintiff's noneconomic loss damages?

"Amount: $_____."

Defendant's first allegation of error arises from an unpredictable and inexplicable series of events that transpired during the jury's deliberations. Shortly after the jury commenced its deliberations, the trial court received a note from the jury reading:

"We have answered questions 1 and 2. We have a No answer for question 2. 5 to 1. Are we to decide on an amount for her to receive?"

Defense counsel argued that this note constituted a "verdict" for defendant but the trial court decided that, since it was in the form of a question, the jurors would be called in and questioned. Upon the jury's return to the courtroom, the court inquired of the foreman whether they had found that there was a serious impairment of a body function. The foreman indicated that the jury had voted "5 to 1 on that question". The court then determined that the jury should be sent back to deliberate the question of whether the plaintiff had suffered a permanent serious disfigurement. Before sending the jury back to deliberate, the trial court decided to redraft the verdict form to separate the questions of serious impairment of a bodily function and permanent serious disfigure-

ment. Accordingly, the jury was given a revised verdict form which was identical to the original in all respects except that it required responses to four rather than three questions. The revised portion of the verdict form is set forth below.

"QUESTION No. 2: Did the injury which plaintiff suffered result in serious impairment of a body function?
"Answer: ——————————————— (yes or no)
"QUESTION No. 3: Did the injury which plaintiff suffered result in permanent serious disfigurement?
"Answer: ——————————————— (yes or no)
"If your answer is 'no', as to questions 2 & 3, do not answer any further questions. If your answer is 'yes' to 2 or 3 then go on to question 4 as to damages."

Approximately one hour later, the court received another note from the jury which read:

"To question No. 3. We do not feel that her scar is a serious disfigurement, but it is a permanent disfigurement. Can this word 'serious' be struck from the question?"

The court called the jury back into the courtroom and repeated the instructions on permanent serious disfigurement. Approximately ten minutes later, the jury returned with a verdict in favor of plaintiff in the amount of $20,000.

Defendant claims, on appeal, that the trial court erred in refusing to accept the jury's findings as they were written in their notes and by not entering a verdict thereon. This claim is not supported by law.

In *Rottmund v Pennsylvania R Co*, 225 Pa 410, 414; 74 A 341 (1909), the court stated:

"All the authorities agree that the only verdict is

that which the jury announce orally in court and which alone is received and recorded as the jury's finding. Mitchell, J., in *Kramer v Kister,* 187 Pa 227; 40 A 1008; 44 LRA 432 (1898)."

More recently, the Court of Appeals for the Fifth Circuit held that votes taken in the jury room prior to being returned in court are merely preliminary and are not binding. *United States v Taylor,* 507 F2d 166 (CA 5, 1975). This Court recently adopted the *Taylor* rule in *People v Mock,* 108 Mich App 384; 310 NW2d 390 (1981).

This rule is consistent with GCR 1963, 512.2 which provides:

"The jury agreeing on a verdict shall return into court and announce their verdict. A party may require a poll which shall be by the clerk asking each juror if it is his verdict. If any juror expresses disagreement on such poll and the number of those agreeing is less than required by law, the jury shall be sent out for further deliberation; otherwise the verdict is complete and the jury shall be discharged."

In *People v Fleish,* 306 Mich 8, 14; 9 NW2d 905 (1943), the Supreme Court stated that a juror could recant a previous assent to a verdict at any time prior to his express in-court assent at the polling. Accord, *Wayne County Prosecuting Attorney v Detroit Recorder's Court Judge,* 64 Mich App 408; 235 NW2d 799 (1975).

No verdict having been reached, it is clear that the trial judge, in revising the verdict form and reinstructing the jury before sending them back for further deliberations, took a proper and reasonable course. The verdict entered by the trial court was the only true and valid verdict.

Secondly, defendant argues that plaintiff's counsel committed error requiring reversal when he

intentionally injected the question of liability insurance coverage into the trial. During closing argument, in rebuttal to defense counsel's closing argument, plaintiff's counsel stated:

"You know, he also said something that I think I have to remark. I have to say to you, he said what he wants is money taken out of Mr. Moore's pocket and put in her pocket. That is untrue. Whatever award that you render in this case will not, will not, I submit to you, come out of Mr. Moore's pocket. That is an untruth. And I challenge that statement."

Defense counsel then asked for permission to approach the bench and, following an off-the-record discussion, plaintiff's counsel continued argument with no further reference to who would pay any potential award by the jury. The record does not reveal whether an objection was made to the argument during the off-the-record discussion, or, if so, whether it was on the grounds now asserted by defendant on appeal; similarly, no motion for a mistrial or request for a curative instruction appears in the record.

Initially, we note that a party who fails to object to the opposing party's closing argument is precluded from raising the propriety of the argument for appellate review. *Warren v McLouth Steel Corp,* 111 Mich App 496, 501; 314 NW2d 666 (1981), MRE 103(a)(1).

Although this Court may, under MRE 103(d), take notice of plain errors affecting substantial rights, even though they were not brought to the attention of the trial court, we are not persuaded that plaintiff's counsel's statement was so improper that any prejudicial effect therefrom could not have been eliminated by a curative instruction if one had been requested upon a timely objection.

*People v Duncan,* 402 Mich 1, 16-17; 260 NW2d 58
(1977); *People v Walker,* 93 Mich App 189, 198;
285 NW2d 812 (1979).

MRE 411 provides that evidence that a person
was or was not insured against liability is not
admissible upon the issue of whether he acted
negligently or otherwise wrongfully, although it is
admissible when offered for another purpose, such
as proof of agency, ownership, or control, if contro-
verted, or bias or prejudice of a witness. MRE 411
is consistent with prior Michigan law in excluding
evidence of liability insurance, MCL 500.3030;
MSA 24.13030. See Committee Note to MRE 411.

The law regarding reference before the trier of
fact to available insurance coverage was summa-
rized by this Court in *Cacavas v Bennett,* 37 Mich
App 599, 604; 194 NW2d 924 (1972), *lv den* 387
Mich 767 (1972), as follows:

"By statute, reference to available insurance coverage
is not to be made by any party. MCL 500.3030; MSA
24.13030. It has been repeatedly held that it is revers-
ible error to intentionally interject the subject of insur-
ance if the sole purpose is to inflame the passions of the
jury so as to increase the size of the verdict. See *Felice
v Weinman,* 372 Mich 278; 126 NW2d 107 (1964); *Ben-
mark v Steffen,* 374 Mich 155; 132 NW2d 48 (1965);
*Cartier v Young,* 31 Mich App 151; 187 NW2d 545
(1971). On the other hand, it is not reversible error if
the subject is only incidentally brought into the trial, is
only casually mentioned, or is used in good faith for
purposes other than to inflame the passions of the jury.
*Morris v Montgomery,* 229 Mich 509; 201 NW 496
(1924); *Sutzer v Allen,* 236 Mich 1; 209 NW 918 (1926);
*White v Makela,* 304 Mich 425; 8 NW2d 123 (1943);
*Watroba v Detroit,* 334 Mich 182; 54 NW2d 212 (1952);
*Broitman v Kohn,* 16 Mich App 400; 168 NW2d 311
(1969)."

In this case, it appears that plaintiff's counsel's

reference to insurance was an effort to rebut defense counsel's improper attempt to impress upon the jury the fact that his client was unemployed and, therefore, unable to pay a judgment. This case is remarkably similar to *Yarabek v Brown,* 357 Mich 120; 97 NW2d 797 (1959), where the Court found a "nonreversible standoff" between defendant's improper effort to get across to the jury the combination of assumed affluence of the plaintiff and the fact and duration of defendant's unemployment, and plaintiff's injection into the case of the insurance status of defendant. Here, as in *Cacavas, supra,* it appears that counsel's purpose in referring to insurance was to "quench the passions" of the jury improperly influenced by his opponent's attempt to paint a picture of abject destitution.

Finally, we are not persuaded by defendant's claim that the trial court committed error by allowing the introduction of evidence of defendant's intoxication at the time of the accident. Defendant argues that inasmuch as evidence of intoxication relates only to the issue of liability, which had been conceded, such evidence was irrelevant and highly prejudicial.

The admissibility of evidence rests within the sound discretion of the trial court and its determination will not be set aside unless there has been an abuse of discretion. *Aetna Life Ins Co v Brooks,* 96 Mich App 310, 314; 292 NW2d 532 (1980). In this case, we cannot conclude that the trial court abused its discretion in determining that evidence of intoxication was relevant to the damages aspect of the trial. *Smith v Jones,* 382 Mich 176; 169 NW2d 308 (1969); *Price v Western,* 330 Mich 680; 48 NW2d 149 (1951).

Even if the evidence was erroneously admitted,

we conclude that it was harmless error. MRE 103(a). Plaintiff's reference to defendant's intoxication was very brief and was not pursued by plaintiff's counsel. Prejudice, if any, resulted from defense counsel's extensive cross-examination of plaintiff regarding defendant's condition.

Affirmed.

Costs to appellee.

C. J. HOEHN, J. *(dissenting).* While agreeing with the majority's statement of the law, I disagree with the result.

In this case, the jury twice announced that they had arrived at a verdict of no cause of action.

When the jury notes indicated that the jury had reached a verdict, it was incumbent on the trial court to call the jury in and ask if they had arrived at a verdict. His failure to do so surely indicated to the jury that something further was expected of them.

The response of the jury was to award a verdict in the sum of $20,000 for scarring that the jury did not consider serious.

This writer is left with the abiding conviction that the conduct of the court, albeit unwittingly, coerced the jury verdict and resulted in a miscarriage of justice. I would reverse and remand for a new trial.